We do have some overlap between the next two cases. So Mr. Pence, you're going to argue for the appellant on both of them. And there's some overlap on the second one. And there is some overlap on the legal issues. We do have this scheduled as two independent arguments. But there's probably going to be some bleeding back and forth. And we'll just try to make it work. And if you have a different way you want to approach this, let me know. But otherwise, I'm going to call 22-6124 Chieftain Royalty v. SM. And I'm also going to call 22-6069 Chieftain Royalty v. SM. You may introduce yourself and proceed. Yes. May it please the Court, John Pence on behalf of Danny George. And just to make clear, this appeal involves both my fee appeal and my incentive award appeal. Okay. Thank you, Your Honor. I was last before this court six years ago in this case. I don't think anyone expected at that time that it would be another six years for it to make its way back here. But that's what happened. Instead of applying Oklahoma law to the record as it existed on the date of the fairness hearing in 2015, which is what this court ordered, the district court permitted class counsel to file an entirely new fee petition, which included $3 million of additional lodestar that did not exist as of November 2015, and then proceeded to wait three additional years for the Supreme Court, the Oklahoma Supreme Court, to approve the fee petition. And then for the Supreme Court to issue its ruling in STRAC. But in connection with that renewed fee petition, or a brand new fee petition, in our view, the district court violated Rule 23H because it did not direct notice of that new fee petition to all of the class members in a reasonable manner. Why isn't that waived? But the Seventh Circuit in Redmond v. Radio Shack, which followed Mercury, said class members are completely handicapped in objecting to a fee petition unless they know what the lodestar data is. For example, here, it's possible that a 40% fee request could be reasonable. Let's say the class counsel's lodestar were $20 million. In that case, it's possible that that's the presumptively reasonable fee under Supreme Court law. It's possible that a 40% fee would be reasonable in that case. But what we now know is that 40% fee request in 2015 represented a multiplier of greater than four, which now, post-STRAC, we know is beyond the pale. Did our court's remand contemplate a new fee, a new notice under 23H? It didn't contemplate a new fee motion. Our position is that every time you move for fees, and every time the class counsel moves for fees, they have to give notice to the class, especially, and I believe the import of Mercury in Redmond is this, that until you give the class notice of your lodestar data, you haven't satisfied notice. Until 2018, when that was finally disclosed on the record, class counsel had not complied. And at that time, they needed to make the class aware that what we're seeking here is a multiplier of what we believe is over 3.4. Because the other reason it's so important to have the lodestar data is there was $3 million of new lodestar spent pursuing a frivolous defense to our meritorious appeal, and that that amount, when multiplied by the court's chosen multiplier, cost the class $6.5 million. Additional fees that they would not have had, had class counsel produced its lodestar in connection with its 2015 fee request. Do I understand your argument also to be that, essentially, not only were there new materials attached, which is why you're referring to the Seventh Circuit case and the Mercury case, which were slightly different factually, we didn't have a new, different motion, but I thought you were also arguing that there was a new, essentially a new motion here. Yeah, yes. I mean, we reversed it, we reversed the attorney fee award, goes back, another motion gets filed, this time with some materials and some different numbers, and it's that motion that should have had notice. Right, right. I believe that's what 23H addresses. It's not the notice that was in the class action settlement notice, which goes out under 23E that said, we're looking for 40% of the total and nothing more. It's the notice that they filed in 2018, which triggers a new 23H notice requirement. The motion, you mean, the motion that was filed. The motion that was filed, yes. Because it wasn't the same motion. No, no, it was materially different. The class counsel and lead plaintiff are seeking to charge the class for their frivolous appeal defenses. Remember, their arguments in the prior appeal was that a 0.5% incentive award was permissible, and that Rule 28 displaced ERIE and mandated the percentage of fund method. And those things were rejected by this court as they were rejected by the First Circuit in VW. That's simply not, 23H merely is a rule of procedure. It imports the governing law from whatever, you know, either the statute or the common law of the state from which the case stems. And class counsel's only response to the argument is that the Oklahoma Supreme Court in Burke permitted class counsel to be compensated for the lodestar they generated in their fee appeal. But that is clearly a mistaken citation to a fee-shifting case. It is also manifestly contrary to the Common Fund Rule and the Common Fund Doctrine, which was articulated in Lindy Brothers and Prandini, which says that lodestar generated in pursuit of your fees is not for the benefit of the class. A party that creates a benefit for the class of similarly situated persons may require them to pay their share of fees that directly created or preserved the benefit. Fees generated by pursuing frivolous defenses of an appeal do not create or preserve a benefit for your clients. Charging class members for these fees violates the Common Fund Doctrine and their due process rights. Did the district court or did anybody make a finding that there was a frivolous appeal? Well, no, no, nor did this court. It didn't term the appeal frivolous. However, it's clear from the opinion that there was no, you know, no merit to class counsel's position on its appeal. It's not the same as, in a fee-shifting case, the defendant is paying the fees generated pursuing class counsel's fees, which is a penalty that the legislature has seen fit to provide because the defendant violated the underlying statute. In this case, the class members are completely innocent of any wrongdoing. Therefore, why should they fund class counsel's pursuit of a fee that clearly exceeds the maximum permitted by Oklahoma law? And why doesn't Burke authorize that? Burke is clearly mistaken. There was no way that, I mean, that was a one-sentence… What do you mean it's mistaken? The citation in Burke was to a, number one, a fee-shifting case. Number two, it did not even mention the Third Circuit's opinion in Lindy Brothers, which at that time had established the rule for the entire… Every circuit since Lindy and Prandini has followed those cases. That's why… Aren't we applying Oklahoma law, though? Yes. But, well, if you believe that that was a holding, it was intentional and not mistaken, then that would be one thing. But that can't be the case because if the court were staking out that position, which would be a minority position that I don't think any other court in any state or federal court has ever adopted, you would expect the court to distinguish the leading federal case, which was Lindy. Well, let's… The holding, first of all, was broader than you're acknowledging, it seems to me, the holding in Burke. I understand what you're saying about it being a fee-shifting case, but it was broader. The court said the attorneys seeking a fee are entitled to reasonable fees for time spent on the application and for their fee in defense of this appeal. Right. If we accept, and I understand your argument, but if we accept that that applies here, even though it's not a fee-shifting case, your arguments, and you have many, about why Burke must be wrong or it shouldn't still be good law, it is still the law. Did you ask to certify in the question? You can complain about all you want about Oklahoma. It's a mistake. They shouldn't have done it or it's inconsistent with everyone else, but we've got to apply Oklahoma law. And if we accept that that is applicable here, then I'm not sure what we're to do about the flawed analysis, even if we agree with it. Right. Well, Your Honor, there's another argument. It simply is so inconsistent with the common fund doctrine that a federal court cannot enforce it. It's so clearly wrong, and the reason why you can accept the Burke's holding with regard to why a lodestar calculation is required and disregard this one is because Burke has been reaffirmed by the Oklahoma legislature and also by the Oklahoma Supreme Court in STRAC. Those things have been accepted. The Oklahoma Supreme Court has never said since Burke that you can get fees spent pursuing a fee petition or defending an appeal, unsuccessfully defending an appeal of your fee award when it's so clearly excessive by Oklahoma standards. They've never really said otherwise either, though. Yes, Your Honor, that's correct. The other issue that class counsel has tried to raise, they've tried to force all of their lodestar through on the argument that the first appeal somehow jeopardized the settlement itself and it wasn't just about fees and the incentive award. This court in footnote five of its 2018 opinion clearly held otherwise. It stated that that issue had been waived. There are no time records specifically relating to defense of the settlement as opposed to defense of fees and the incentive award. Hensley v. Eckerhart would seem to require that if the court were going to compensate that portion of the lodestar, that it compensate only the portion spent on settlement approval and settlement defense and not the lodestar spent on defending your attorney's fees and the incentive award. Did the district court review the time records here and assess them for reasonableness? Yeah, the district court did review them, but it allowed everything in. In other words, rather than doing its duty under Hensley, which is to determine what portion of the lodestar was spent successfully defending the settlement as opposed to the unsuccessful lodestar, which is the vast majority of it, if not all of it, spent trying to defend the percentage award without any supporting lodestar data and the incentive award. Furthermore, there was no way to spend time defending that because it was part of the appeal. Well, we take issue with that. I know Mr. Isaacson intends to address that, but it really wasn't part of the appeal. This court said that it had been waived. It wasn't really developed in footnote five. If you look at the oral argument transcript, their attorney never mentions it during the oral argument. It really wasn't an issue. And if it was, then it consumed, I would say, no more than 10% of their overall lodestar. Furthermore, there was no risk attached to the time spent after appeal. That settlement was secured. Therefore, even if you're going to allow that lodestar to be compensated, it should certainly not be enhanced, that $3 million, by a risk multiplier. Did you intend to split time with Mr. Isaacson? Well, is this my entire time? You called my two appeals, so I assumed. Okay. And he's going to comment on the attorney's fees part of this, right? Yes, yes he is. You still get your 15 minutes on incentive awards, but let's hear from Mr. Isaacson. Okay, thank you. I think that's going to work better. All right. So, why don't you sit down and let him comment. Oh, okay, that's going to come later. And then I'll let you respond on the attorney's fees side, okay? Thank you. All right. Just to be clear, we'll look at attorney's fees and then come back to the incentive award. Correct. Thank you. May it please the Court, Eric Allan Isaacson for Objector and Appellant Charles David Nutley. I think that the most important aspect of this appeal is the fact that this court directed the district court to apply Oklahoma law with respect to attorney's fees. The Oklahoma Supreme Court, years after the remand that the district judge was just sitting on, issued its opinion in STRAC, which says that in a common fund case, and it was an oil gas royalty class action just like this one, a court has to award a reasonable fee considering both a reasonable percentage and a reasonable load star, or the load star cross check if you want to call it that. The Oklahoma Supreme Court in STRAC, in a oil and gas royalty case just like this one, rejected class counsel's arguments that 40% was a customary fee and ruled that the appropriate fee is in the range of 20% to 30% with a median of 25%. It says in paragraph 22, and I quote, we determined that an award of 40% of the common fund in this case is excessive in comparison to the average percentage, 20% to 30% used in reported cases involving class action litigation. Instead, using an average percentage like 25% of the common fund would yield an attorney fee award of $12,450,000 compared to the $19,920,000 awarded in this case. That argument was made in the district court, wasn't it, that basically he was varying it upward too high? Yes, absolutely. Higher than authorized by STRAC. He made the argument in the district court and he said... But he explained why he was doing so. Yes, he said the statistic referenced in STRAC does not reflect an average award in this type of case as shown by the record. That's exactly what he said, JA 680, page 12. He rejected STRAC. He said the Oklahoma Supreme Court was wrong to say that in... He didn't say they were wrong. He said that this case justified a deviation from the facts in STRAC. What he cited then were the Hetherington Declaration, Van Dyck Declaration, Miller Declaration. What about the chart? Didn't he also rely on the chart? Wasn't that chart also in evidence in STRAC? Yes, it was rejected by the Supreme Court of Oklahoma in STRAC. They didn't say anything about rejecting it, did they? Absolutely they did because they rejected the 40%. The first two paragraphs of STRAC. I thought it was... They talked about the record and the record in STRAC included this chart, same chart we have here, which does not show anything like a 20% to 30% being a reasonable average amount. The chart that was submitted in STRAC was submitted to purportedly show that 40% was the appropriate amount. The Oklahoma Supreme Court rejected it. The same data is presented in these declarations. They relied on the record to do so, so I'm not sure what... I'm just wondering about that because it seemed that they might have that same chart here. Well, if not the same chart, it was a very similar chart, and basically they put in a lot of stuff saying that district courts in unpublished opinions in Oklahoma courts award 40% fee awards with large multipliers. The Oklahoma Supreme Court said you can't do that. Paragraph two of its opinion says class counsel argues that these 40% awards are customary. What does it say that it's a cap? I think your contention is that it's a cap, right? Well, what the Oklahoma Supreme Court says is the range is 20% to 30%. But it also says that you have to consider... There's broad discretion. You have to consider the unique facts of every case. So how can it possibly be a cap if you're also considering the specific evidence and facts presented in the case before the court? Well, the question is a starting point. The Oklahoma Supreme Court's analysis in paragraph 22 says the range is 20% to 30%. Let's look at the middle of that range, 25%. If you do that in this case, if you do what the Oklahoma Supreme Court did, 25% of $52 million is $13 million. And the judge departed upward $4.3 million. $4.3 million is a lot more than $13 million. Would a 26% number be unlawful under a strike? 26%? Yeah. No. 31%. It would be presumptively out of the range. You've got to have a good explanation for deviating upward from 25%. Well, here we have 33, right? And the court says you've got to compare it with the lodestar. In this case, the district court accepted a lodestar of a little over $8 million, which I think was excessive, applying a 1.5 lodestar multiplier, which the Oklahoma Supreme Court says we rarely allow a multiplier above 1.5. Applying that, you get what? About $12 million. The district judge in this case gave an attorney's fee award of $17.3 million. That's $5.3 million more than the top award that the Oklahoma Supreme Court suggested is appropriate at $12 million. And that's assuming a lot of stuff goes in the lodestar that I think shouldn't be there. The judge should not have started with his original opinion. His original opinion was, I like 33.3%. He said, I'm sticking to that. I'm applying the Johnson factors again because the Johnson factors are pretty similar to the Oklahoma factors. And I'm going to dismiss what the Oklahoma Supreme Court said is the appropriate range and the appropriate analysis with 25% being the starting point within that range. I'm going to call that a statistic that does not reflect an average award in this type of case as shown by the record, citing material that is inconsistent with what the Oklahoma Supreme Court ruled. This court did not follow STRAC. You can argue about whether Burke is right or wrong. But STRAC is binding here. And the court did not follow STRAC. It did not start with STRAC. It did not apply the assumption that the range ought to be between 25% and 30%. It says that's a statistic that doesn't apply because it doesn't apply to this kind of case. Citing cases that are inconsistent with STRAC. And this draft, as Judge Moore had pointed out, rejected in the chart that was submitted in that case. Why don't you go ahead and wrap up with your last comment? Those are the primary points that I want to make, unless you have any questions. Thank you very much. All right. Now let's turn to the Applebee's response. And this is going to be on the attorney's fees. And then you're going to sit down, and we're going to do incentive fees. Okay? May it please the Court. I guess it's afternoon, so good afternoon, Your Honors. My name is Brad Beckworth. I am a partner at Nix Patterson. And here today on this first appeal, I am representing the Applebee, which is class counsel. So I guess I've waded into that strange part of the law where I'm actually kind of representing myself in the co-counsel in this case. Just to address a couple of things quickly that you guys asked, Judge Rossman, the notice issue was absolutely waived. It was waived really doubly or twice. One, they did not appeal the notice in the first case. They didn't object to the notice in the first instance. Why is that a matter? We remanded. They appealed the attorney fee issue. Yes. We remanded. You filed a new motion with new numbers and new material. Why wasn't the class entitled to have that new motion? Well, there are several answers to that. And how could they object to a new motion when they didn't have it yet? They didn't even have the information that was attached to the new motion, obviously, the first time around. Sure, Your Honor. Multiple answers to that. How could they waive that? Well, first, waivers waiver. And this court's case law is very strong on that. They did not appeal the notice. The notice went to asking for a percentage of the fee. That is what Oklahoma law allows under STRAC, expressly under STRAC. So there's no difference there. It's not the substance of the notice. The difference this time is there was no notice. So that's different. Your Honor, we renewed our motion based on the exact same notice that was given. But it wasn't the same motion, is my point. The only difference was we added evidence into it. However, when you go back to what happened before the first appeal, they did not object to the notice. They got our briefs. What they argued was that other information was required. They preserved that. It came up, went back on appeal. However, in the first part of the case, we also severed out their objections. That was in the final judgment. That was not appealed. Every single class member was bound by that. And, therefore, the only two objections that stayed were those on behalf of these two objectors. You added a low star amount. You added $3 million. I'm sorry? Did you add something to this one, to the second time around? We simply added all the evidence. Were your numbers the same? We didn't put in time records the first time. We did it the second time. The result is the same. So you have a low star figure the second time, but you didn't have it the first time. That's correct. Which is a big difference. It is and it isn't because we come back. It is a big difference. How could that not be a big difference? The entire class got notice that didn't contain a low star figure, much less low star information. Well, if nothing else, it would be harmless error. It is waiver, and here's why it's harmless. How can they waive something they don't even know what they're waiving? They didn't get the notice to begin with. I disagree with that, respectfully. Because you're relying on the lack of an objection to the first notice to support your waiver argument? That is correct, and the fact that it was severed. If we're looking at the rule, Rule 23, and it refers to a claim for an award must be made by motion. Notice of the motion must be served. What is the motion in this rule? The motion was the original motion, which we renewed following this court's mandate. So a renewed motion is not the motion? The original motion was the motion. We filed a renewed motion, which all it did was come back and give the evidence that this court said was required. And we have to remember that when the panel originally reversed, its holding was that Oklahoma law required a low star, and that a percentage analysis was not allowed. In essence, that the law was different than what this circuit's law is on common fund jurisprudence. Could you have gotten to the same place by just supplementing the original motion? I mean, is there something special about filing a renewed motion that, you know, sort of implicates the concerns that Judge Moritz has been raising here, that the class just didn't have notice of the actual thing at issue, which is the evidence supporting the low star? Right. I don't think there is anything special about it because, one, STRAC has said the law was what we always said it was, that a percentage is allowed and you do a low star cross-check. This court, in its mandate, didn't order new notice at all. It sent it back to the district court to say, if you want to look at new evidence, you can follow our mandate, and he did. So, basically, you're saying a new motion, you didn't even need to file a new motion. Is that what you're saying? I agree with that, yes. I don't think we had to. I think we could have just submitted the records. I'm confused, and maybe I didn't understand your response. The first notice, what did it have as the low star figure? It did not have a low star. Right. It had a percentage. The whole idea of giving a class notice of the low star and the information that backs it up is so that they can review that information and decide, does this look accurate? Does this look right? And what you're saying is, because you didn't think it was necessary, you didn't provide not only the information, you didn't provide the number. They didn't have anything the first time around, is what you're saying. The second time around, we said, you've got to have it. You give it to them. So this is more than just a renewed motion. This has information and numbers they've never seen before, which is the whole point of giving the class notice, so they may evaluate the low star information that they never had. So I'm struggling to see how this is a renewed motion. Well, let me address that head on. Let's just take everything you said is exactly how it is, that it's not a renewed motion, it's a new motion, anything like that. It doesn't change the outcome at all, right, because when this court sent it back, it said low star only. But the intervening decision by the Supreme Court says you have a choice. You can do either a percentage or you can do a low star. You should do a cross check. That sounds eerily familiar and exactly familiar to this court's most recent pronouncement of the law in Bulgarus, in which Judge Rossman was on the panel. So when you do that, we didn't have to put low star information in at all if you reach that on all four corners, but we did. So then the question would be if there was error on notice, was it harmful or harmless? Absolutely it's harmless, and here's why. One, we always notice a 40%. Only two people objected to that. That created an adversarial situation to test everything that we were doing, which is what the trial court did. These two gentlemen, on behalf of their clients, have fought this for eight years. There's other people out there. There's many other class members who don't know what your low star information was, and the whole idea is to be able to compare the low star to the percentage, and that's what Strack said you should do. That's what Oklahoma law says you should do. Should, not must. But you did it, so I don't know why we're even questioning. You did it. You gave them the new information, but only these two plaintiffs know about it. But those plaintiffs or those objectors are seeking to stand in the shoes of all the absent class members who, by the way, let's just be clear about this. The Mercury Inactive case that they're citing was about the timing of filing an objection or filing a motion. We filed our original motion prior to the deadline for objections. That motion did not have any low star data in it. It just had the percentage. Out of 21,000 people who got direct actual notice, none of them objected, not one. These gentlemen had our full brief. They challenged it. I understand all that. Okay. I think the easiest way. I don't know how we assume that those 20,000 people might not think differently when they receive low star information, and that's what you're asking us to, just disregard any notice. Let me handle it. I'm sorry. Can I ask? I've taken up too much of your time. That's okay. My colleagues probably have other questions. Sorry. I have more questions. I'm ready. I wondered about the case, I'm trying to find it, the Oklahoma case that presumes to suggest that you can get your attorney fees on appeal. Yes. How is that applicable here? Don't we have error here in applying a case that was nothing like this case? It wasn't a common fund case. It was a fee-sharing case. Shouldn't we restrict the holding of Burke to what it was? Absolutely not, Your Honor. Okay. This is a classic case of being careful what you ask for. When this case came up the first time, the express argument was Oklahoma law must follow Burke. Burke is the law. It is sacrosanct. And that is what the first panel did. And in doing so, it said, Lodestar, Lodestar, Lodestar. Now, if you read Stratt carefully, and we'll come back to your specific question, I think this dovetails into, if you read Stratt carefully, what Stratt did, it reversed the court of appeals in the first instance. And what was the court of appeals decision? To follow exactly what happened in the first instance here and say Oklahoma law and common fund class actions is Lodestar, Lodestar, Lodestar. That was a flat dismissal of that. So we're back to Oklahoma law. We're in Stratt. Burke has always been used by Oklahoma practitioners when you're looking at time and labor, whether in a Lodestar or anything else. Time and labor is an express factor under Rule 2023. The courts must look at that, whether it is on a percentage basis or on a Lodestar basis or on a cross check. Burke says what it says. Time spent pursuing fees and protecting a judgment on appeal is part of what must be considered or can be considered in time and labor. Let me also say this. To your point, Judge Stankovich, there was no frivolous appeal. They don't want to talk about it. They keep disagreeing with what the flat record says. They appealed the settlement itself, claiming there was an incurable conflict of interest between us and our client who's here today. And when the first opinion came down in intervest, we had to go back in our motion to reconsider and for rehearing and ask the court to clarify that the original judgment and settlement was affirmed, which this court did. And Judge DeGiusti hit that squarely on the head. So this idea that those time hours don't count doesn't matter. But we can talk about Lodestar, and I'm happy to answer any questions you have. The petition for rehearing and the petition for certiorari, what I understand Burke held was that you can count your time in the Lodestar figure as far as what you defended, how you defended your attorney fee award on appeal. But once you get an adverse decision from this court, you're then challenging, aren't you, when you seek rehearing or seek a petition for certiorari? Isn't that challenging rather than defending? And should you be entitled to those fees under Burke? Well, first, we didn't include those fees. Secondly, that's not exactly what Burke said. We did not include the petition for cert in our deal. Judge DeGiusti specifically says those hours weren't even on the record when we resubmitted. So that just didn't happen. But be it as it may, we can't get away from one thing. What they're asking you to do in all this Lodestar discussion is to say, we asked for Oklahoma law to apply, we don't like what Strack says, and they're asking this court to go back, reverse Burke, which issued 1979, and then rewrite into Strack things that are required. To your points earlier, Judge, Strack issued a range. It doesn't have a mandatory ceiling or a mandatory floor. It doesn't say you can't deviate from it at all. What it says is you have flexibility. Rule 2023 is liberal. The point is to get a reasonable fee. And if you go through each of the 13 factors, there's no double counting, they're all mandatory, you have to go through them, your findings on the fact are subject to a clear air standard of review. Judge DeGiusti did that. He's the chief judge of the Western District of Oklahoma. He has been a practitioner of litigation in Oklahoma for his entire career, and he followed Strack to the letter. And not only would you have to ignore what he did, and ignore Strack and rewrite it, you would also have to ignore this circuit's most recent pronouncements on common fund jurisprudence in Syngenta and in Vulgaris, where this court says, look, a 33% fee is absolutely within the range, and you all cited the exact same 20% to 30% range in that case and in Brown, which Strack relied upon. You said 33 is okay, and in that case, the recovery was only arguably 15% to 25% of the damages. Let's address that real quick before my time is up. Our recovery here is 100%, and I would submit to you that there are very few lawyers who have been in front of this court like I have that have had 100% recovery in an oil and gas case that's being argued this month and had another one that was argued in front of Judge Ritz where he had 100% recovery on a verdict and another 100% on top of that on punitive damages. That's a real recovery. Secondly, the fee is not 33%. It's 33% of the cash, but the undisputed and unobjected to record is that the amount of the settlement was $54.965 million. The fee is 31.5%. I'd like to close with this if I may. Any issue with notice is absolutely harmless because nothing would have changed. When we go back under Strack with this record, you could send it back for notice again. The judge is going to do the same thing. He's going to follow the law, and he had a record here of 21 expert reports and affidavits from a who's who of Oklahoma law, including judges, may I finish this pointer, including two former U.S. attorneys, the former chief judge of the Eastern District of Oklahoma, the U.S. attorney that tried the McVeigh case here in Denver, the trial court judge who tried the tobacco case in Oklahoma and presided as a discovery master in the opioid case that I tried on behalf of the state of Oklahoma, Lane Phillips, who sat on this court by designation, is a leading mediator in this country and who was a U.S. attorney and judge in Oklahoma. And, if I may finish, Jeffrey Miller, who this court cites in the bulk of its class action futures prudence, who clerked for Justice White and who issued a report in this case and provided all of the data the judge did choose to rely on. Thank you so much. Finishing with that appeal to authority, I will submit the...